**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cornele A Overstreet, | No. CV-24-01356-PHX-DJH |
|        Petitioner, | **ORDER** |
| v. | |
| Lucid USA Incorporated, | |
|        Respondent. | |

Respondent Lucid USA Incorporated ("Respondent" or "Lucid") seeks to dismiss this case in its entirety under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (Doc. 55 at 1.) Lucid argues that the structure of the National Labor Relations Board ("NLRB") is unconstitutional. (*Id*.) It specifically argues that (1) the NLRB's Board Members and (2) its Administrative Law Judges ("ALJ") are unconstitutionally insulated from executive removal in violation of Article II. (*Id*. at 2–3). The Motion is fully briefed. (Docs. 57 & 60). The Court denies Lucid's Motion for the following reasons.

## I.    Background

### A.    The NLRB's Purpose and Structure

In 1935, Congress created the NLRB to "pursue its policy of 'encouraging the practice and procedure of collective bargaining' to more effectively resolve 'industrial disputes arising out of differences as to wages, hours, or other working conditions.'" *YAPP USA Auto. Sys., Inc. v. Nat'l Lab. Rels. Bd*., 2024 WL 4119058, at *2 (E.D. Mich.

Sept. 9, 2024) ("*YAPP*") (quoting the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151).  One of the "key functions" of the NLRB is to adjudicate allegations that employers have engaged in "unfair labor practice[s]." *Id.* § 160.  If the NLRB finds merit in an unfair-labor-practice allegation, it issues a complaint.  *Id.*  The NLRB is comprised of its General Counsel, Board Members and ALJs.

### 1.     General Counsel and Board Members

The NLRB is a bifurcated agency governed by a five-person Board ("the Board") on one side and General Counsel on the other.  "Congress explicitly granted all judicial or quasi-judicial functions to the Board and gave the General Counsel investigative, prosecutorial, and managerial responsibilities." *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1104 (9th Cir. 2023) (citing 29 U.S.C. § 153(d)).   "This bifurcated structure reflects the intent of the Congress 'to differentiate between the General Counsel's and the Board's "final authority" along a prosecutorial versus adjudicative line.' " *NLRB v. Fed. Lab. Rels. Auth.*, 613 F.3d 275, 278 (D.C. Cir. 2010) (quoting *NLRB v. United Food & Com. Workers Union, Loc.* 23, 484 U.S. 112, 124 (1987)).

The NLRB reviews and adjudicates objections to conduct during a union election process.  *See* 29 C.F.R. § 102.69(c).  An aggrieved party may file a charge with the NLRB alleging any of the unfair labor practices outlined in Section 8 of the NLRA.  *See id.* §§ 101.2, 102.9.  Charges are filed with the NLRB Regional Director for the region in which the alleged violation occurred, and that official is responsible for determining if there is sufficient evidence to substantiate a charge.  *Id.* § 101.4.  Regional Directors act under the purview of the General Counsel.  29 U.S.C. § 153(d).  If the Regional Director finds that a charge has merit, he or she initiates formal action by issuing a complaint.  *Id.* § 101.8.

The General Counsel is "appointed by the President, by and with the advice and consent of the Senate, for a term of four years."  29 U.S.C. § 153(d).  The General Counsel "supervises the officers and employees in the regional offices, as well as all attorneys except for administrative law judges and Board Members' legal assistants." *Aakash, Inc.*, 58 F.4th at 1104 (citing 29 U.S.C. § 153(d)).   The General Counsel has a "purely executive

function" that "is detached from the Board's adjudicatory function." *Rieth-Riley Constr. Co. v. NLRB*, 2024 WL 3811837, at *5 (6th Cir. Aug. 14, 2024); 29 U.S.C. § 153(d). In addition to the supervision of officers and employees, the General Counsel has the "final authority" in the investigation of charges, the issuance and withdrawal of complaints, and the prosecution of such complaints before the Board. 29 U.S.C. § 153(d); *Rieth-Riley*, 2024 WL 3811837, at *4-5. The NLRA "does not insulate the General Counsel from removal because it is silent as to tenure protections for the General Counsel." *Id.* Consequently, the General Counsel serves "at the President's pleasure" and is removable at will. *Collins v. Yellen*, 594 U.S. 220, 248 (2021).

The Board is "made up of five members who serve staggered terms that can last up to five years." *YAPP*, 2024 WL 4119058, at *2 (citing 29 U.S.C. § 153(a)). These five members of the Board are "appointed by the President by and with the advice and consent of the Senate, and the President designates which of the five is to serve as Chairman." *Id.* The NLRB does not require balancing the Board members by their political party, but "there has been a 'tradition' since the Eisenhower years that Presidents have filled no more than three of the NLRB's five seats with members of their own party." *Id.* (citing Brian D. Feinstein & Daniel J. Hemel, *Partisan Balance with Bite*, 118 COLUM. L. REV. 9, 54 (2018)). "The primary duty of the NLRB is to enforce the [NLRA], a task that it carries out (almost) exclusively by adjudicating labor disputes." *Cortes v. NLRB*, 2024 WL 1555877, at *1 (D.D.C. Apr. 10, 2024). The Board Members' duties and powers include, adjudicating and issuing agency decisions in unfair labor cases, 29 U.S.C. § 160(c); petitioning courts for the enforcement of such orders, 29 U.S.C. § 160(e); conducting and certifying the outcome of union elections, 29 U.S.C. § 159; promulgating rules and regulations, 29 U.S.C. § 156; and, at the close of each fiscal year, submitting a written report to Congress and to the President "summarizing significant case activities and operations for that fiscal year." 29 U.S.C. § 153(c). Members of the Board may only be removed by the President "for neglect of duty or malfeasance in office." 29 U.S.C. § 153(a). / / /

1

2. **The ALJs**

Complaints are adjudicated in a hearing before an ALJ, whose decision may be appealed to the Board. *NLRB v. Ampersand Publ'g, LLC*, 43 F.4th 1233, 1235 (9th Cir. 2022). The NLRB ALJs are appointed by the five-member Board in accordance with the Civil Service Reform Act, 5 U.S.C. § 3105, and the NLRA, 29 U.S.C. § 154(a), to "inquire fully into the facts as to whether [a defendant] has engaged in or is engaging in an unfair labor practice affecting commerce as set forth in the complaint." 29 C.F.R. § 102.35(a). In doing so, the NLRBs ALJs are afforded the power to:

> (1) "[a]dminister oaths and affirmations;" (2) grant applications for subpoenas and rule upon petitions to revoke subpoenas; (3) "[r]ule upon offers of proof and receive relevant evidence;" (4) "[t]ake or cause depositions to be taken;" (5) "regulate the course of the hearing," including to "exclude persons or counsel from the hearing for contemptuous conduct;" (6) hold settlement conferences; and (7) resolve motions, including motions for default judgment, summary judgment, or to amend pleadings.

*Alivio Med. Ctr. v. Abruzzo*, 2024 WL 4188068, at *3 (N.D. Ill. Sept. 13, 2024) (citing 29 C.F.R. § 102.35(a)(1)-(13)). After a hearing, the assigned ALJ "issues a decision that contains 'findings of fact, conclusions of law, and the reasons or grounds for the findings and conclusions, and recommendations for the proper disposition of the case.' " *Id*. (citing 29 C.F.R. § 102.45(a)).

After the ALJ issues a decision, parties may file "exceptions to the [ALJ's] decision or to any other part of the record or proceedings (including rulings upon all motions or objections)." 29 C.F.R. § 102.46(a). Similarly, any party "aggrieved by a final order of the Board" may petition for review of the Board's action in their regional court of appeals or in the D.C. Circuit. *See* 29 U.S.C. § 160(f). If no exceptions are filed, "the findings, conclusions, and recommendations contained in the [ALJ's] decision will . . . automatically become the decision and order of the Board and become its findings, conclusions, and order." 29 CFR § 102.48; 29 U.S.C. § 160(c). However, the Board is not required to use an ALJ and it may elect to preside over an enforcement action itself. 29 CFR § 102.50. Even when an ALJ has been assigned to preside, the Board is "free to adopt findings of

1  fact and conclusions of law different from the ALJ's conclusions." *Alivio Med.*, 2024 WL

2  4188068, at *3 (citing *Local 65-G, Graphic Commc'ns Conf. of Int'l Bhd. of Teamsters v.*

3  *N.L.R.B.*, 572 F.3d 342, 348 (7th Cir. 2009)).  After an ALJ's decision is issued, if the

4  Board determines that an employer has engaged in conduct prohibited by the NLRA, the

5  Board may "seek enforcement of its order[s] in a federal court of appeals." *Glacier Nw.,*

6  *Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 776 (2023) (citing 29

7  U.S.C. § 160(e)).

8      Removal of a federal ALJ is governed by 5 U.S.C. § 7521(a) and is a two-step

9  process: (1) the NLRB members must bring an action to remove an ALJ; and (2) the Merit

10  Systems Protection Board ("MSPB"), an independent federal agency, must determine that

11  good cause for ALJ removal exists.  5 U.S.C. § 7521(a).[1]

12      **B.      The Proceedings Against Lucid[2]**

13      This case arises from Lucid's alleged efforts to stifle the unionization of its

14  employees.  (*See* Doc. 1).  Lucid is a manufacturer of electric vehicles based in Casa

15  Grande, Arizona.  (*Id*. at ¶ 2).

16      On February 21, 2023, the United Auto Workers Union ("the UAW") filed a charge

17  with the NLRB under Sections 8(a)(1) and (a)(3) alleging Respondent has and continues

18  to engage in unfair labor practices.   (*Id*. at ¶ 4).   Petitioner Cornele Overstreet

19  ("Petitioner"), the Regional Director of the NLRB,   investigated these allegations and

20  determined that there was "reasonable cause to believe" that Respondent is engaging in

21  unfair labor practices in violation of 29 U.S.C. §§ 158(a)(1) and (3).  (*Id*. at ¶ 5(b)).  These

22  alleged unfair labor practices include, among other things, "confiscating employees' union

23  literature, engaging in surveillance of employees' union activity, threatening employees in

24  response to union activity, directing employees not to engage in union activity, and

25

26  [1] Members of the MSPB may be removed only for "inefficiency, neglect of duty, or
   malfeasance in office."  5 U.S.C. § 1202(d).

27  [2] Unless otherwise noted, these facts are taken from Plaintiff's Complaint.  (Doc. 1).  The
   Court will assume the Complaint's factual allegations are true, as it must in evaluating a
28  motion to dismiss.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

1    discharging employees spearheading union organizing efforts." (*Id.* at ¶ 6).

2        On January 2, 2024, Petitioner issued a consolidated complaint against Lucid

3    (Doc. 13-2 at 7–15) and noticed an administrative hearing for October 9, 2024.

4    (Doc. 1 at ¶ 5(c)).  Lucid's Answer to the consolidated complaint denied engaging in any

5    unfair labor practices.  (*Id.* at ¶ 6).

6        On June 6, 2024, Petitioner filed a Petition for Temporary Injunction in this Court,

7    seeking to limit Lucid's ability to further stifle unionization.  (*See* Doc. 1 at ¶¶ 1–5).  On

8    September 13, 2024, the Court granted Petitioner a preliminary injunction enjoining

9    Respondent from engaging in certain activity, such as discharging employees for engaging

10   in unionization activity or surveilling employees.  (Doc. 59).

11       Lucid argues in its Motion to Dismiss that this Court cannot consider the NLRB's

12   petition for a preliminary injunction because the NLRB's Board and ALJs are subject to

13   unconstitutional removal protections.  (Doc. 55 at 1).[3]

14   **II.    Legal Standards**

15       **A.    Subject Matter Jurisdiction**

16       A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the

17   court.  *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003).

18   The plaintiff must show that the court in question has jurisdiction to hear their case.  *See*

19   *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  A court must dismiss

20   a plaintiff's complaint if it fails to establish subject matter jurisdiction.  *Savage*, 343 F.3d

21   at 1039 n.2.

22       Jurisdictional challenges can be either facial or factual.  *See Safe Air for Everyone*

23   *v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A facial attack exists when a defendant

24   asserts the complaint's jurisdictional allegations are insufficient on their face to

25   demonstrate jurisdiction.  *See Menza v. United States Dep't of the Treasury*, 1999 WL

---

[3] Lucid argues that the Court does not have subject matter jurisdiction over this matter "due to [the NLRB's] lack of standing."  (Doc. 55 at 1).  Lucid clarifies in its Reply, however, that it is not arguing that the NLRB lacks standing under *Lujan v Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), but that it lacks standing because the NLRB's Board and ALJ's are unconstitutionally insulated from removal—therefore, the Court is "powerless" to enforce its Section 10(j) petition.  (Doc. 60 at 2–3).

550243, *1 (D. Or. 1999), *aff'd* 2000 WL 1029069 (9th Cir. 2000).  Where the attack is factual, "the court need not presume the truthfulness of the plaintiff's allegations."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In resolving a factual dispute regarding subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment.  *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction").  Where a factual motion to dismiss is made and only written materials are submitted for the court's consideration, a plaintiff need only establish a prima facie case of jurisdiction.  *See Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 942 (9th Cir. 1981).  Lucid notes that their challenge is a factual one.  (Doc. 55 at 5).

## B.    The Appointments Clause

The Constitution provides for separate legislative, executive, and judicial branches.  U.S. Const. arts. I, II, III.  Article II's Vesting Clause provides that "[t]he executive Power shall be vested in a President of the United States of America."  U.S. CONST. art. II, § 1, cl. 1.  Article II, Section 2 then enumerates specific presidential powers.  One of these key powers is the appointment of Officers of the United States.  The Appointments Clause provides that the President:

> shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

*Id*. § 2, cl. 2.

The Constitution is silent on the President's power to remove those officers from office.  *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1130 (9th Cir. 2021) (citing *Myers v. United States*, 272 U.S. 52 (1926)).  However, the Supreme Court has explained that:

> Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.' Art. II, § 1, cl. 1; *id.*, § 3. Because no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance. Ten years ago, in *Free Enterprise Fund v. Public Company Accounting Oversight Bd*., 561 U.S. 477 (2010), we reiterated that, 'as a general matter,' the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties,' *id.*, at 513–514. Without such power, the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else. *Id.* at 514.
>
> The President's power to remove – and thus supervise – those who wield executive power on his behalf follows from the text of Article II, was settled by the First Congress, and was confirmed in the landmark decision *Myers v. United States*, 272 U.S. 52 (1926). Our precedents have recognized only two exceptions to the President's unrestricted removal power.  In *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), we held that Congress could create expert agencies led by a *group* of principal officers removable by the President only for good cause. And in *United States v. Perkins*, 116 U.S. 483 (1886), and *Morrison v. Olson*, 487 U.S. 654 (1988), we held that Congress could provide tenure protections to certain *inferior* officers with narrowly defined duties.

*Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 203–04 (2020).  In sum, the Supreme Court has recognized and reaffirmed a "board member exception" and an "inferior officer exception" to the President's removal authority.  *See id.*

## III.    Discussion

Respondent Lucid argues that the NLRB's Complaint and resulting injunction issued by this Court should be dismissed because the NLRB's Board members and ALJs are improperly insulated from removal.  (Doc. 55 at 8).  To assess whether the removal restrictions for the NLRB's Board Members and ALJs are unconstitutional, the Court must first determine whether the protections fall within one of the two established exceptions to the President's general removal authority. The Court will first assess the removal protections of the NLRB's ALJs.

### A.    The NLRB's ALJ Removal Protections

Lucid argues that the NLRB's ALJs are unconstitutionally insulated from removal

1  because they "may only be removed through a two-step process" and because they possess
2  administrative authority.  (Doc.  55 at 13).  The NLRB argues that its ALJs removal
3  protections are constitutional because they perform "a purely adjudicatory function" rather
4  than "policymaking and enforcement functions," i.e., they "cannot *sua sponte* initiate
5  investigations or commence a . . . case."  (Doc. 57 at 11–12).

6       The President holds the inherent authority to remove executive officers who assist
7  him in carrying out his duties.  *See Free Enterprise Fund*, 561 U.S. at 513–14.  It is
8  generally constitutional, however, for Congress to "protect inferior officers with 'good
9  cause' removal restrictions."  *YAPP*, 2024 WL 4119058, at *7 (citing *Morrison*, 487 U.S.
10  at 692–93).  The NLRB's ALJs are "inferior officers."  *Id.* (citing *Lucia v. SEC*, 585 U.S.
11  237, 244 n.3 (2018)).  ALJs are appointed by the Board to "inquire fully into the facts as
12  to whether [a defendant] has engaged in or is engaging in an unfair labor practice affecting
13  commerce as set forth in the complaint."  29 C.F.R. § 102.35(a).  These ALJs issue
14  decisions which can be objected to, or not, but the Board is not required to use an ALJ and
15  it may elect to preside over an enforcement action itself.  29 CFR § 102.50.  The removal
16  of an NLRB ALJ is a two-step process limited to instances where "good cause [is]
17  established and determined by [the MSPB] on the record after opportunity for hearing
18  before the Board."  5 U.S.C. § 7521(a).

19       The constitutionality of the removal protections for the NLRB's ALJs appears to be
20  a matter of first impression in this Circuit.  A circuit split has recently developed on the
21  constitutionality of the two-layer removal protections for NLRB's ALJs.  *See Alivio Med.*,
22  2024 WL 4188068, at *10 (noting that "[t]he circuits have split on the question of whether
23  the *Free Enterprise* holding striking down the two-level tenure protection for the [Public
24  Company Accounting Oversight Board] members applies to the two-level tenure protection
25  schemes afforded to agency ALJs like those employed by the NLRB.").  The Ninth Circuit
26  has addressed the constitutionality of the removal protections for the Department of
27  Labor's ("DOL") ALJs, however, which are substantially similar to the NRLB's.  *See*
28  *Decker Coal*, 8 F.4th 1123, 1129–36.  The Court therefore finds *Decker Coal* instructive.

1    In *Decker Coal*, the Ninth Circuit decided the open question of whether 5 U.S.C. §

2    7521, the statute governing removal protections of the DOL's ALJs, was constitutional.

3    8 F.4th at 1126.  The DOL ordered the Decker Coal Company to pay benefits under the

4    Black Lung Benefits Act ("BLBA")[4] to an employee who developed "severe chronic

5    obstructive pulmonary disease (COPD)."  *Id*.  The company appealed the DOL's

6    administrative decision and a merits hearing was held before an ALJ.  *Id*. at 1127–28.  The

7    ALJ awarded the employee BLBA benefits and the Decker Coal Company appealed that

8    decision to the Ninth Circuit.  *Id*. at 1126, 1129.

9    On appeal, Decker, relying on *Free Enterprise Fund*, argued that Section 7521's

10   removal protections infringed upon the President's removal powers by "impermissibly

11   insulating ALJs from termination through two levels of 'for-cause' employment

12   protection."  *Decker Coal*, 8 F.4th at 1126.  In *Free Enterprise Fund*, the Supreme Court

13   considered whether a "new situation" of "separate layers of protection may be combined."

14   *Free Enterprise Fund v. Pub. Co. Acct. Oversight Bd*., 561 U.S. 477, 483, (2010).  This

15   "new situation" was the Public Company Accounting oversight Board ("PCAOB"), whose

16   members could be removed by the Security Exchange Commission ("SEC") under certain

17   limited circumstances.  *Id*. at 487.  The SEC's Commissioners themselves could not be

18   removed by the President except for "inefficiency, neglect of duty, or malfeasance in

19   office."  *Id*.  The PCAOB members were found to be "inferior officers" who "exercise[d]

20   significant executive power" and enjoyed two-level tenure protection.  *Id*. at 514.  The

21   Supreme Court held that the two-level tenure protection for the PCAOB members was

22   "contrary to Article II's vesting of the executive power in the President" because "[n]either

23   the president, nor anyone directly responsible to him, nor even an officer whose conduct

24   he may review only for good cause, has full control over the [PCAOB]."  *Id*. at 496.

25   *Decker Coal* distinguished the removal provisions at issue in *Free Enterprise* as

26   they "presented 'an even more serious threat to executive control than an "ordinary" dual

_____

[4] The Black Lung Benefits Act, 30 U.S.C. §§ 901–944, is a federal program established by Congress to compensate coal miners who develop Black Lung Disease as a result of their work in the mines.  *Decker Coal*, 8 F.4th at 1126.

1   for-cause standard' because the statute codified 'unusually high' and specific standards for
2   removal, including 'willful violations of the [Sarbanes-Oxley] Act, Board rules, or the
3   securities laws; willful abuse of authority; or unreasonable failure to enforce compliance'
4   with the Act." 8 F.4th at 1132. It also noted that *Free Enterprise Fund* "distinguished the
5   '***adjudicative*** rather than ***enforcement or policymaking functions***' of many ALJs from
6   those of the PCAOB" at issue in *Free Enterprise*. *Id.* (emphasis added). It further noted
7   that *Free Enterprise Fund* "left open the question whether two-level protections for ALJs
8   are constitutionally permissible." *Id.* at 1133 (citations omitted). Citing *Morrison v. Olson*,
9   the Ninth Circuit observed that Congress may provide removal protections to "inferior
10  officers." *Id.* at 1130.

      On the merits, *Decker Coal* concluded that "the President has sufficient control over
12  DOL ALJs to satisfy the Constitution." *Id.* at 1133. It concluded so for three reasons.

13      First, the court recognized significant distinctions between PCAOB members, who
14  exercise policymaking and enforcement functions, and DOL ALJs, who cannot *sua sponte*
15  initiate investigations or commence a case. *See id.* The court found that DOL ALJs
16  perform a "purely adjudicatory function." *Id.* So, unlike the PCAOB's ALJs, the DOL's
17  ALJs lack of enforcement or policymaking ability was not "central to the functioning of
18  the Executive Branch for purposes of the Article II removal precedents." *Id.*
19  (citations omitted).

20      Second, Congress had not "tied the President's hands or hindered his control over
21  his subordinates in the manner it had in *Free Enterprise Fund*." *Id.* The Circuit reasoned
22  that "[t]he President can always choose to restrain himself in his dealings with
23  subordinates" and that Congress did not overstep in insulating DOL ALJs because no
24  statute mandates that the DOL employ ALJs in adjudicating benefits claims. *Decker Coal*,
25  8 F.4th at 1133 (quoting *Free Enter. Fund*, 561 U.S. at 497). "Rather, Congress imposed
26  only the requirement that DOL adjudicators be '[q]ualified individuals appointed by the
27  Secretary of Labor.' " *Id.* (quoting 30 U.S.C. § 932a). So, because Congress had not
28  imposed ALJs on the Executive, but it chose to use ALJs, that choice "required the

1    President to accept a dual for-cause removal scheme, even if that means 'restrain[ing]

2    himself in his dealings with subordinates.' "  *Id.* (quoting *Free Enter. Fund*, 561 U.S.

3    at 497).

4           Third, *Decker Coal* reasoned that the DOL's Benefits Review Board "provides the

5    President with meaningful control over DOL ALJs" because it hears appeals from the

6    decisions of ALJs, therefore, it can readily overturn an ALJ's decision that is legally

7    erroneous or unsupported by substantial evidence.  8 F.4th at 1134.  In essence, the DOL's

8    ALJs fell into the inferior officer exception recognized in *Morrison*.  *See id*. at 1130.

9           Given the pronouncement's in *Decker Coal*, the Court finds that the NLRB's ALJs

10   also fall into this exception.  Like the DOL's ALJs in *Decker Coal*, the NLRB's ALJs

11   removal protections in 5 U.S.C. § 7521 do not improperly insulate them from removal.

12          First, the NLRBs ALJs cannot *sua sponte* initiate investigations or commence a

13   case.  *Decker Coal*, 8 F.4th at 1133; 29 C.F.R. § 102.35(a)(1)-(13).  They perform "purely

14   adjudicatory functions" which are subject to review by the Board.  29 C.F.R. § 102.46(a);

15   *see also YAPP*, 2024 WL 4119058, at *8 ("NLRB ALJs perform purely adjudicatory

16   functions.").  Second, the executive has chosen to use ALJs.  This choice requires the

17   President to accept a dual for-cause removal scheme, even if that means restraining himself

18   in his dealings with subordinates.  *See id*.  Finally, the Board is "free to adopt findings of

19   fact and conclusions of law different from the ALJ's conclusions."  *Alivio Med*., 2024 WL

20   4188068, at *3 (citations omitted).  So, the NLRB provides the President with meaningful

21   control over its ALJs because it hears appeals from the decisions of ALJs, therefore, it can

22   readily overturn an ALJ's decision that is legally erroneous or unsupported by substantial

23   evidence.  *Decker Coal*, 8 F.4th at 1134.

24          In sum, like the DOL's ALJs in *Decker Coal*, the NLRB's ALJs fall into the inferior

25   officer exception because they perform purely adjudicatory functions and issue non-final

26   recommendations to the Board which the Board can review and overturn if they are legally

27   erroneous or unsupported by substantial evidence.  *Decker Coal*, 8 F.4th at 1134.  So, the

28   two-level removal protections at issue here are valid under binding Ninth Circuit precedent.

1    *See id.* at 1134–36.

2    **B.    The Board Member's Removal Protections**

3        NLRB Board Members may only be removed by the President "for neglect of duty

4    or malfeasance in office." 29 U.S.C. § 153(a).   Lucid argues that this restriction is

5    unconstitutional because it "hamstring[s] the President's 'unrestricted removal power'

6    guaranteed by Article II." (Doc. 55 at 7).  The Court disagrees.

7        The constitutionality of the NLRB's removal protections has not been addressed by

8    the Supreme Court or Ninth Circuit.  However, several district courts in other circuits and

9    other circuit courts of appeal have addressed this issue.

10       The recent line of cases challenging the constitutionality of removal protections for

11   executive boards begins with *Free Enterprise Fund,* which holds that the President  has the

12   inherent authority to remove executive officers who assist him in carrying out his duties.

13   *See* 561 U.S. at 513–14.  Following *Free Enterprise*, the Supreme Court decided *Seila Law*,

14   591 U.S. at 197.  There, the Supreme Court declined to extend the *Humphrey's Executor*

15   removal exception to the removal protections for the sole director of the Consumer

16   Financial Protection Bureau ("CFPB"), an independent agency that "wields significant

17   executive power  . . .  lacks a foundation in historical practice[,] and clashes with

18   constitutional structure by concentrating power in [a] unilateral actor insulated from

19   Presidential control."  *Id*. at 204.  However, the Supreme Court expressly stated that it

20   "d[id] not revisit *Humphrey's Executor* or any other precedent" when considering the

21   constitutionality of the removal procedures for the CFPB's sole director.  *Id*. at 228.

22       Based on *Seila Law* and *Free Enterprise Fund*, the Fifth Circuit recently held that

23   the removal restrictions for the SEC's ALJs were unconstitutional because those ALJs

24   perform "substantial executive functions" and the two-level tenure protection impeded the

25   President's ability to have sufficient control over the performance of their functions.

26   *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 463–65 (5th Cir. 2022), *aff'd on other*

27   *grounds*, 144 S.Ct. 2117 (2024).[5]  Bound by their Circuit's precedent, district courts in

28   _____

[5] The Supreme Court did not address the Fifth Circuit's holdings related to the SECs ALJs.
It instead affirmed the Fifth Circuit's decision on a Seventh Amendment argument alone.

1    Texas have found that the NLRB's ALJs and Board members are unconstitutionally

2    insulated from removal.  *See Space Exploration Techs Corp. v. NLRB* ("SpaceX"), 2024

3    WL 3512082, at *3 (W.D. Tex. July 23, 2024); *Energy Transfer, LP v. NLRB*, 2024 WL

4    3571494, at *2 (S.D. Tex. July 29, 2024).

5        District courts in other circuits have also considered whether the Board Member

6    Exception applies to the removal protections for the NLRB's Members and have reached

7    opposite conclusions.  *Compare YAPP*, 2024 WL 4119058, at *5 (finding that "the NLRB

8    appears to fall comfortably within the *Humphrey's Executor* exception") *with SpaceX*,

9    2024 WL 3512082, at *4 ("Finding that NLRB Member's removal protection[s] are

10   constitutional would require this court to expand *Humphrey's Executor* where the Supreme

11   Court has repeatedly declined to do so.").

12       The Board Member Exception was first recognized in *Humphrey's Executor*.  There,

13   the Supreme Court "considered a constitutional challenge to the removal protections given

14   to the Federal Trade Commission's ('FTC') Commissioners in 1935 and held that Congress

15   was permitted 'to give for-cause removal protections to a multimember body of experts,

16   balanced along partisan lines, that performed legislative and judicial functions' and 'that

17   do not wield substantial executive power.' " *Alivio Med. Ctr.*, 2024 WL 4188068, at *5

18   (quoting *Humphrey's Executor*, 295 U.S. at 619–20).  The *Humphrey's* Court further stated

19   that "[s]uch a body cannot in any proper sense be characterized as an arm or an eye of the

20   executive.  Its duties are performed without executive leave and . . . must be free from

21   executive control."  *Humphrey's Executor*, 295 U.S. at 628.  The Supreme Court

22   emphasized in *Humphrey's* that Congress' ability to impose removal restrictions upon the

23   executive "will depend upon the character of the office."  295 U.S. at 631.  The statute

24   insulating the FTC Commissioner's in *Humphrey's* is similar to the NLRA; allowing

25   removal in cases of "inefficiency, neglect of duty, or malfeasance in office," but nothing

26   else.  *Id*. at 620 (quoting 15 U.S.C. § 41).  *Humphry's Executor* "sheds helpful light on the

27   analysis of the removal protections of the NLRB members."  *Yapp USA Auto*, 2024 WL

28

*Sec. & Exch. Comm'n v. Jarkesy*, 144 S.Ct. 2117, 2139 (2024).

4119058, *5.

When considering whether the removal procedure for an agency's board members or commissioners fits within the *Humphrey's Executor* removal exception, courts consider the following organizational features of the agency:

> (1) does it have multiple members who are non-partisan or balanced along partisan lines?

> (2) are the members' duties neither political nor executive but instead call for the trained judgment of a body of experts informed by experience?

> (3) are the terms of the members staggered to enable the agency to accumulate technical expertise and avoid a complete change in leadership at any one time?

> (4) does the agency function as a legislative or judicial aid in a quasi-legislative and quasi-judicial manner that does not exercise any enforcement power, or does it "promulgate binding rules" fleshing out federal statutes, "unilaterally issue final decisions awarding legal and equitable relief in administrative adjudications," and have the power to "seek daunting monetary penalties against private parties on behalf of the United States in federal court"? and

> (5) is the agency well-grounded in historical precedent or does it reflect a novel concept that lacks a historical pedigree?

*Alivio Med. Ctr.*, 2024 WL 4188068, at * 7 (citing *Seila Law*, 591 U.S. at 215-16, 218-19; *Humphrey's Executor*, 295 U.S. at 619-20, 624, 628).

Lucid implores this Court to follow *SpaceX* and conclude that the NLRB's Members are unconstitutionally insulated from removal and that the *Humphrey's Executor* board member exception does not apply to them. (Doc. 55 at 6–7). It attempts to distinguish the NLRB from the FTC at issue in *Humphrey's Executor*, arguing that its exceptions do not apply here as "*Humphrey's Executor* was based on a premise not present here – that allowing the President to exercise unfettered executive control over the FTC would itself violate separation of powers because the FTC's primary function was to assist the Judiciary and Congress, not the President." (Doc. 55 at 8). The Court disagrees and concludes that the removal protections of the NLRB's Board Members fall within the board member exception set out in *Humphrey's Executor*.

The Court finds, as *YAPP* and *Alivio Med* have, that the NLRB's structure fits within the parameters of the board member exception. *See Humphrey's Executor*, 295 U.S. at 620 (holding that for-cause removal protections for a multimember body of experts, balanced along partisan lines, that perform legislative and judicial functions and holding no executive power are constitutional). The President may only remove NLRB Board Members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause" like inefficiency. 29 U.S.C. § 153(a). The FTC Commissioners at issue in *Humphry's* could be removed for "inefficiency" in addition to "neglect of duty or malfeasance in office." *SpaceX*, 2024 WL 3512082, at *4. While the Board's removal restrictions are more limited than the FTC's Commissioners' were in *Humphry's*, *see id.*, the removal restrictions contained in Section 153(a) still fall within the board member removal exception. *See Humphrey's Executor*, 295 U.S. at 620.

First, like the FTC, the NLRB Board is a multi-member independent expert agency which is balanced along partisan lines. *See Yapp*, 2024 WL 4119058, at *2 ("Although political balancing of the Board members is not mandated by the NLRA, 'there has been a "tradition" since the Eisenhower years that Presidents have filled no more than three of the NLRB's five seats with members of their own party.' ") (quoting Brian D. Feinstein & Daniel J. Hemel, *Partisan Balance with Bite*, 118 COLUM. L. REV. 9, 54 (2018)). Second, the Board Member's duties call for the trained judgment of a body of experts informed by experience as their duties and powers are vast, encompassing adjudicating and issuing agency decisions in unfair labor cases, 29 U.S.C. § 160(c); petitioning courts for the enforcement of such orders, 29 U.S.C. § 160(e); conducting and certifying the outcome of union elections, 29 U.S.C. § 159; promulgating rules and regulations, 29 U.S.C. § 156; and, at the close of each fiscal year, submitting a written report to Congress and to the President "summarizing significant case activities and operations for that fiscal year." 29 U.S.C. § 153(c).

Third, the Board Members serve staggered multi-year terms. *See* 29 U.S.C. § 153(a) ("the Board shall consist of five instead of three members, appointed by the President by

and with the advice and consent of the Senate. Of the two additional members so provided for, one shall be appointed for a term of five years and the other for a term of two years."). Fourth, as noted by the Ninth Circuit, "Congress explicitly granted all judicial or quasi-judicial functions to the Board and gave the General Counsel investigative, prosecutorial, and managerial responsibilities." *Aakash, Inc.*, 58 F.4th at 1104 (citing 29 U.S.C. § 153(d)). Further, the Board must seek enforcement of an ALJ's order in a federal court of appeals. *Glacier*, 598 U.S. at 776. So, the NLRB's General Counsel has the executive power, not the Board Members. *See Seila Law*, 591 U.S. at 216 ("In short, *Humphrey's Executor* permitted Congress to give for-cause removal protections to a multimember body of experts, balanced along partisan lines, that performed legislative and judicial functions and was said **not to exercise any executive power**.") (emphasis added). The NLRB Members do not "prosecute" Section 10(j) petitions either. *See Alivio Med.*, 2024 WL 4188068, at *8.

Lastly, the NLRB is well-grounded in historical precedent—it is structured similarly to many other independent, multimember agencies. *See generally Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 762 (10th Cir. 2024); *Seila Law*, 591 U.S. at 220 ("'Perhaps the most telling indication of [a] severe constitutional problem' with an executive entity 'is [a] lack of historical precedent' to support it.") (quoting *Free Enterprise Fund*, 561 U.S., at 505). The NLRA was enacted in 1935, establishing the NLRB almost 90 years ago. 29 U.S.C. § 151 *et seq*. Its constitutionality was also upheld by the Supreme Court in 1937. *See NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937). The NLRB is therefore well-grounded in historical precedent.

In sum, the NLRB's Board Members' removal protections in Section 153(a) fall within *Humphrey's Executor* board member exception and are therefore constitutional. *See Humphrey's Executor*, 295 U.S. at 620; *Alivio Med.*, 2024 WL 4188068, at *7. Thus, Lucid's constitutional attack upon the NLRB's structure fails.

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    Conclusion

For the reasons stated herein, the Court concludes that the removal protections for the NLRB's ALJs and Board Members do not violate the Appointments Clause. U.S. Const. art. II, § 2, cl. 2.

Accordingly,

**IT IS ORDERED** that Lucid's Motion to Dismiss (Doc. 55) is **DENIED**.

Dated this 23rd day of December, 2024.

_____
Honorable Diane J. Humetewa
United States District Judge